**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| HAMOUD ALI ALI AL-DAILAM, and OMAR HAMOUD ALI AL-DAILAM, | Case No. 1:24-cv-00108 JLT CDB |
| Plaintiffs, | ORDER GRANTING MOTION TO DISMISS |
| v. | (Doc. 26) |
| MARCO RUBIO[1], et al., | |
| Defendants. | |

## I.    INTRODUCTION

Hamoud Ali Ali Al-Dailam and Omar Hamoud Ali Al-Dailam bring this action against U.S. Secretary of State Marco Rubio, the Embassy of the United States in Djibouti, and the U.S. Department of State, challenging Defendants' denial of Omar's visa application, alleging violations of the Administrative Procedure Act, 5 U.S.C. § 706, and the Immigration and Nationality Act, 8 U.S.C. § 1152(a)(1)(A), as well as breach of contract.[2] (Doc. 24 (FAC).)

---

[1] Pursuant to Federal Rule of Civil Procedure 25(d), the current Secretary of State is automatically substituted as a party in place of the original lead Defendant, former Secretary of State Anthony Blinken.

[2] Plaintiffs also advance a claim under the Declaratory Judgment Act, 28 U.S.C § 2201, but as Defendants point out, the Declaratory Judgment Act merely creates a remedy, not an independent cause of action. *See also Leigh-Pink v. Rio Properties, LLC*, 849 F. Appx 628, 630 (9th Cir. 2021) ("The Declaratory Judgment Act, 28 U.S.C. § 2201, creates only a remedy, not a cause of action." (citing *Stock West, Inc. v. Confederated Tribes of the Colville Reservation*, 873 F.2d 1221, 1225 (9th Cir. 1989)).

1

Defendants moved to dismiss all three claims pursuant to Federal Rule of Civil Procedure 12(b)(1) and 12(b)(6). (Doc. 26.) Plaintiffs opposed as to the APA and breach of contract claims.[3] (Doc. 30.) and Defendants replied (Doc. 31). For the reasons set forth below, Defendants' motion to dismiss is **GRANTED**. Because Plaintiffs have not requested leave to amend and the Court cannot envision how the claims can be cured, dismissal is **WITHOUT LEAVE TO AMEND**.

## II.    BACKGROUND

### A.    Relevant Visa Application Processes

A magistrate judge in this district recently provided a helpful summary of the family immigrant visa process:

> Foreign nationals may petition for immigrant visas based on a familial relationship with a U.S. citizen or Lawful Permanent Resident. *See* 8 U.S.C. §§ 1151(b)(2)(A)(i), 1153(a)(1)-(4); 1201(a)(1)(A); 22 C.F.R. §§ 42.21, 42.42. In accordance with the Immigration and Nationality Act (INA), consular officers have authority to issue immigrant visas. 8 U.S.C. § 1201; 22 C.F.R. § 42.71. Before a consular officer can issue a visa, an applicant must make a proper application, 8 U.S.C. § 1201(a)(1), "in such form and manner" prescribed by the regulations, *id*. § 1202(a).
>
> For a family-based immigrant visa, the sponsoring U.S. citizen or legal permanent resident must file a "Petition for Alien Relative (Form I-130)" with the United States Citizenship and Immigration Services (USCIS). 8 U.S.C. § 1154. After the USCIS approves the I-130 form, it transfers the petition to the National Visa Center (NVC) for preprocessing if the noncitizen beneficiary of the visa petition is not located in the United States, and the beneficiary may submit a DS-260 Online Immigrant Visa and Alien Registration Application to begin the visa application process. 9 Foreign Affairs Manual (FAM) § 504.1-2(a)(1).
>
> Once the NVC determines an applicant is documentarily complete and a consular officer completes "necessary clearance procedures," the applicant is considered documentarily qualified "to apply formally for an immigrant visa[.]" 22 C.F.R. § 40.1(h). This requires "personally appearing before a consular officer and verifying by oath or affirmation the statements contained on ... Form DS–260[.]" *Id*. § 40.1(l). During the interview, an applicant can formally apply for an immigrant visa by swearing to or affirming the contents of the DS-260 and signing it before a consular officer. 22 C.F.R. § 42.67(a).

---

[3] The INA claim is premised on 8 U.S.C. § 1152(a)(1)(A), "a non-discrimination provision stating that, 'except as specifically provided' elsewhere in the statute, 'no person shall receive any preference or priority or be discriminated against in the issuance of an immigrant visa because of the person's race, sex, nationality, place of birth, or place of residence.'" *Colindres v. U.S. Dep't of State*, 575 F. Supp. 3d 121, 139–40 (D.D.C. 2021) (citing § 1152(a)(1)(A)). Because Plaintiffs entirely failed to oppose dismissal of this claim, the Court finds that Plaintiffs have abandoned the INA claim.

2

> The INA provides "[a]ll immigrant visa applications shall be reviewed and adjudicated by a consular officer." 8 U.S.C. § 1202(b). Once an application is properly completed and executed before a consular officer, the officer must either issue or refuse to issue a visa. *See* 22 C.F.R. § 42.81(a).

*Ali v. Ordeman*, No. 2:23-CV-02822 CKD, 2024 WL 2274912, at *1 (E.D. Cal. May 20, 2024).

### B.    Factual Background

Plaintiff Hamoud is a naturalized U.S. citizen who resides in Bakersfield, California (FAC, ¶ 16.) Hamoud married his wife, Khaizaran Abdulla Al-Materi on December 12, 1984 in Yemen. (*Id*., ¶ 17.) On March 18, 1988, Omar was born to Hamoud and Khaizaran in Yemen. (*Id*., ¶ 18.) On April 9, 2002, Hamoud naturalized as a United States citizen. (*Id.,* ¶ 19.)

On August 10, 2004, Hamoud filed a Form I-130 Petition for Alien Relative for his wife and two children, including Omar. (*Id*., ¶ 20.) On Omar's Form I-130 Petition, Hamoud listed Omar's name as "Omar Abdulla Nashar" and claimed him as a stepson, even though Omar was his biological son. (*Id*., ¶ 21.)

The I-130 Petition was approved and initially sent to the United States embassy for an interview in Sanaa, Yemen in 2009. (*Id*., ¶ 22.) Omar maintains he did not attend the interview at that time. (*Id*.)[4]

On January 3, 2018, Omar completed his form DS-260 Immigrant Visa Application, listing his name as Omar Hamoud Ali Al-Dailam and listing Omar Abdulla Nasher as another name used. (*Id*. ¶ 25, Ex. K.) On January 11, 2018, Counsel for Omar emailed the consul director at the time, Brian Sells, and advised that Hamoud had listed Omar as his stepson previously, but Omar was using his correct name. (*Id*. ¶ 26, Ex. L.)

On February 22, 2018, Omar and his family were interviewed at the consulate in Djibouti and issued a "Refusal Worksheet" stating Omar was inadmissible based on "212(a)(6)(i)." (*Id*. ¶ 27, Ex. M.) Counsel for Plaintiff sent an email requesting "further clarification of the basis of the refusal given that he told the truth and timely retracted any misrepresentation committed by his

---

[4] The government disputes this allegation, pointing to a 2019 email sent by someone at the State Department to Plaintiffs' counsel indicating that Omar attended a consular interview in 2009 and misrepresented his identity during that interview. (Doc. 24-1, p. 62 ("Mr. Aldailam knowingly misrepresented his identity in a 2009 visa interview when he was 21 years old.").) For purposes of the analysis herein, the Court must assume the truth of Plaintiffs' allegations. However, the 2019 email also indicates that Omar admitted to this misrepresentation in March 2018. (*Id*.)

father." (*Id*. ¶ 28, Ex. N.) Counsel for Plaintiff received a response from the consulate on March 20, 2018, stating: "I agree. It was a timely disclosure, but I don't think the officer checked the alias portion of the DS-260. We're reviewing. This visa ineligibility will likely get removed from the case. Just give me a few days to discuss internally." (*Id*. ¶ 29, Ex. O.)

Eventually, however, upon further review, the State Department confirmed that a consular officer refused Omar's visa pursuant to INA § 212(a)(6)(C)(i) based on fraud or willful misrepresentation:

> In this case, a consular officer found that Mr. Aldailam knowingly misrepresented his identity in a 2009 visa interview when he was 21 years old. Specifically, Mr. Aldailam willfully made a material misrepresentation to obtain an immigration benefit when he presented an invalid passport in the identity "Omar Hassan Abdulla Nasher" to which he had no legitimate claim. A consular officer further found that nine years later in March 2018, Mr. Aldailam admitted to this misrepresentation. As you are aware, a retraction is timely if it is made at the first opportunity and before the conclusion of the same proceeding during which an individual made the misrepresentation. Hence, this admission, could not be considered a timely retraction. Thus, the consular officer found your client inadmissible pursuant to INA section 212(a)(6)(C)(i).

(Doc. 24-1 at 62.)

## III. STANDARDS OF DECISION

### C. Rule 12(b)(1)

Pursuant to Federal Rule of Civil Procedure 12(b)(1), a party may challenge a claim for relief for lack of subject-matter jurisdiction. "A Rule 12(b)(1) jurisdictional attack may be facial or factual." *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004) (citation omitted). A facial attack, for example, "accepts the truth of the plaintiff's allegations but asserts that they are insufficient on their face to invoke federal jurisdiction." *Salter v. Quality Carriers, Inc.*, 974 F.3d 959, 964 (9th Cir. 2020) (internal quotation marks and citation omitted). Like a motion to dismiss under Rule 12(b)(6), a Rule 12(b)(1) facial attack requires the Court to presume the truth of the plaintiff's factual allegations "and draw all reasonable inferences in his favor." *Doe v. Holy See*, 557 F.3d 1066, 1073 (9th Cir. 2009). "By contrast, a factual attack contests the *truth* of the plaintiff's factual allegations, usually by introducing evidence outside the pleadings." *NewGen, LLC v. Safe Cig, LLC*, 840 F.3d 606, 614 (9th Cir. 2016) (internal quotation marks and

citations omitted) (emphasis in original).

**D.     Rule 12(b)(6)**

Under Rule 12(b)(6), a district court must dismiss if a claim fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). To survive a Rule 12(b)(6) motion to dismiss, the claimant must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible when the plaintiff pleads facts that "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). There must be "more than a sheer possibility that a defendant has acted unlawfully." *Id.* Plaintiffs must "nudge[] their claims across the line from conceivable to plausible" or "their complaint must be dismissed." *Twombly,* 550 U.S. at 570.

## IV.     DISCUSSION

**A.     Doctrine of Consular Non-Reviewability/APA Claim**

Defendants first argue that any challenge to the consular officer's decision to refuse Omar's visa is barred by the doctrine of consular non-reviewability, (Doc. 26 at 9–12), which is a challenge that must be brought under Rule 12(b)(6). *See Allen v. Milas*, 896 F.3d 1094, 1102 (9th Cir. 2018); *Ahromi v. Blinken,* No. CV-23-2054-PHX-DMF, 2024 WL 3396071, at *2 (D. Ariz. July 12, 2024).

The Doctrine bars judicial review of the denial of a noncitizen's visa application where "the consular officer cited an admissibility statute that specifies discrete factual predicates the consular officer must find to exist before denying a visa or . . . *alternatively*, there is a fact in the record that provides at least a facial connection to the statutory ground of admissibility." *Khachatryan v. Blinken*, 4 F.4th 841, 849 (9th Cir. 2021) (emphasis added) (quoting *Allen v. Milas*, 896 F.3d 1094, 1104–05 (9th Cir. 2018)). "For more than a century, the [Supreme] Court has recognized that the admission and exclusion of foreign nationals is a 'fundamental sovereign attribute exercised by the Government's political departments largely immune from judicial control.'" *Department of State v. Munoz*, 602 U.S. 899, 907–908 (2024) (quoting *Trump v. Hawaii*, 585 U.S. 667, 702 (2018)). When Congress delegates to executive officials the

5

discretionary authority to admit noncitizens, "the action of an executive officer to admit or exclude an alien is final and conclusive.'" *Id.* at 908 (internal quotations and citations omitted). "The Judicial Branch has no role to play unless expressly authorized by law," and, because the INA "does not authorize judicial review of a consular officer's denial of a visa, . . . as a rule, the federal courts cannot review those decisions." *Id.* (internal quotations and citation omitted).

Plaintiffs argue that their claims "[do] not implicate the doctrine of consular nonreviewability, and [instead] challenge[] the discriminatory policies applied by the Defendants to an otherwise facially neutral process, is therefore properly before this Court." (Doc. 30 at 6.) More specifically, Plaintiffs contend that they are "challenging the bad faith actions of the Defendants in arbitrarily finding him inadmissible, then admissible, then rescinding the approval and finding Omar inadmissible again under the same basis that the Defendants claim did not apply. That is not a decision. That is a process of bad faith juggling and stringing along the Plaintiffs who paid for a service and expected adjudication in compliance therewith." (*Id.*)

Plaintiffs attempt (*see* Doc. 30 at 9) to frame the above as a claim under § 706(2)(A) of the APA,[5] which allows courts to "hold unlawful and set aside agency action, findings, and conclusions found to be . . . arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A)). Applying the APA, a court will overturn an agency's determination only when the agency "has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise." *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.,* 463 U.S. 29, 43(1983)). Plaintiffs argue that they have stated a claim under the APA because they have alleged "Defendants have acted in a manner ultra vires to their statutory authority and contrary to their own decisions in the same case" given that "Defendants have agreed with Plaintiff Omar that he

---

[5] The APA provides a waiver of sovereign immunity for claims brought by any "person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute." *See* 5 U.S.C. § 702. Federal Defendants do not dispute this, challenging only whether there is a valid waiver of sovereign immunity applicable to Plaintiffs' contract claim. (Doc. 26 at 14.)

did not make a material misrepresentation, and continued to drag his case out with other bas[es] of inadmissibility, all of which he has overcome, only to be told, once again, that he made a material misrepresentation," a conclusion that is "not supported by the statutory authority." (Doc. 30 at 9.) Even assuming the truth of these allegations and Plaintiffs' additional assertion that "Plaintiff Omar did not misrepresent a material fact by using another name" because he was still identified as "the child of Plaintiff Hamoud in every application," (Doc. 30 at 10), the doctrine of consular non-reviewability still bars this claim.

As mentioned, the doctrine bars judicial review where "the consular officer cited an admissibility statute that specifies discrete factual predicates the consular officer must find to exist before denying a visa or . . . *alternatively*, there is a fact in the record that provides at least a facial connection to the statutory ground of admissibility." *Khachatryan*, 4 F.4th at 849. Here, as the Defense points out, a consular officer adjudicated Omar's immigration visa and refused it, citing 8 U.S.C § 1182(a)(6)(C)(i), which has a sufficient factual predicate to satisfy the first alternative discussed in *Khachatryan*. *See Algzaly v. Blinken,* No. 21-16375, 2022 WL 2235785, at *1 (9th Cir. June 22, 2022).

To the extent Plaintiffs attempt to frame this claim as a failure to issue a final decision, such a claim fails for multiple reasons. First, the assertion that the decision is non-final is not supported by plausible factual allegations, given that documents attached by Plaintiffs to the FAC confirm that a consular officer found Omar inadmissible. (*See* Doc. 24-1 at 62.) Moreover, absent a statute that provides an independent private right of action, a cause of action brought under § 706(a)(2) is subject to 5 U.S.C. § 704, which provides that judicial review is available only of "final agency action for which there is no other adequate remedy in a court." If the decision is not final, it is not cognizable under § 706(a)(2).[6] Thus, the motion to dismiss is **GRANTED** as to the APA claim.

///

///

---

[6] To the extent Plaintiffs' suggestion that Defendants have been "stringing" Plaintiffs along could be read as an unreasonable delay claim under APA § 706(1), Plaintiffs do not mention § 706(1) in their opposition. p

**B.    Contract Claim**

Plaintiffs also advance a breach of contract claim in which Plaintiffs allege that "[b]y collecting filing fees, the Defendants have "created a contract of sale with the Plaintiffs for the proper adjudication of their visas." (FAC, ¶ 153.) This claim is entirely without merit. As another district court recently explained in response to essentially the same claim brought by Plaintiffs' counsel on behalf of a different petitioner:

> The doctrine of consular nonreviewability bars consideration of [the breach of contract claim]. Although Plaintiffs package [it] as a breach of contract claim, in reality, [it] is merely duplicative of their bad faith claim. (*See* TAC ¶ 608 (alleging breach of contract based on Defendants' "bad faith ... refus[al] [of] Plaintiff[]'s visa on a ground which they knew did not apply to him").) Because [the breach of contract claim] seeks review of the consular officer's decision to deny [the] visa application, it is barred by the doctrine of consular nonreviewability unless the exception applies. *Muñoz*, 602 U.S. at 908. However, as noted above, the [complaint] does not plausibly allege that the denial of [plaintiff's] visa burdens the constitutional rights of a U.S. citizen. Therefore, the exception does not apply, and the doctrine of consular nonreviewability bars consideration of [the claim].
>
> Even if the doctrine of consular nonreviewability did not apply—and it does—the court would nonetheless conclude that Count 5 fails to state a claim upon which relief may be granted. Plaintiffs cite no authority—and the court is aware of none—to support their claim that the acceptance of filing fees creates a binding contract between the Executive and Plaintiffs, such that the court may inquire into the bases for the denial of Abdulla's visa application. (*See* TAC ¶¶ 596-610; Opp. at 12-13.) Indeed, such a holding would fly in the face of the doctrine of consular nonreviewability. Thus, even if the doctrine of consular nonreviewability did not apply, the court would conclude that Count 5 fails to state a claim upon which relief may be granted. Count 5 is dismissed.

*Alhariri v. Blinken*, No. 22-CV-1036 (NGG) (TAM), 2025 WL 1434317, at *12 (E.D.N.Y. May 19, 2025). The motion to dismiss is **GRANTED** as to the breach of contract claim.

**C.    Leave to Amend**

Plaintiffs have not requested leave to amend, and the Court cannot envision how the complaint could be amended to overcome the defects outlined above. Thus, dismissal will be without leave to amend.

///

///

8

**V.      CONCLUSION AND ORDER**

For the reasons set forth above:

1.      The motion to dismiss (Doc. 26) is **GRANTED**.

2.      The Clerk of Court is directed to **CLOSE THIS CASE**.

IT IS SO ORDERED.

Dated:   **March 31, 2026**

UNITED STATES DISTRICT JUDGE

9